Hah, Judge. —
Whether there should be a rehearing in the case of Benzien’s heirs v. Lenoir, &c. or whether a bill of review will lie in the case of Griffin’s heirs v. Griffin’s ex’rs. depends upon the right construction of the acts of Assembly passed for the purpose of establishing the Court of Conference, afterwards styled the Supreme Court.
The first act that passed upon the subject, was in the year 1799, entitled an act directing the Judges of the Superior Courts to meet together, to settle questions of Law and Equity, arising on the Circuit, (New Rev. ch. *405 520). This act, in the preamble, amongst other things, complains of the want of uniform decisions in questions of Law and Equity arising on the Circuits. It then proceeds to enact, that the Judges shall meet together, at times therein fixed upon, in the city of Raleigh, for the purpose of determining all questions of Law and Equity arising and remaining undetermined upon the Circuit. It there puts it in the power of a single Judge on the Circuit, to adjourn questions of Law arising on the Circuit, to the city of Raleigh, to b® decided on by all the Judges at their stated meetings.
It is then made the duty of the Clerk of the Court of Conference, to transmit a full and correct certificate of the decision of the Judges,.to the Clerk of the Superior Court of Law and Equity, where the question had been depending and had arisen, and the Clerk of said Court shall issue execution as shall be proper in the case, or otherwise proceed, as the decision of the Judges may demand.
The reason why there was a want of uniformity in judicial decisions, was that the different Superior Courts were held' by single Judges, and there was no Court established of higher grade, for the purpose of making these decisions uniform, and as might be expected, there were, on the same question, contrariant opinions. This mischief gave, rise to the act I have just recited. This act did not establish a-Court of higher grade than the Superior Courts — it did not establish a Court of Appeals, to which an appeal lay from the Superior Courts, and in which, after an appeal, the suit was finally decided and settled | but it adopted the mode of making all the Judges decide every disputed question which arose in any of the Superior Courts, which the Judge holding such Court, thought proper to adjourn to the Court of Conference.
■ After the Judges in that Courfgave their opinions, those opinions were certified to the Court from whence the case came, and the same proceedings were had on it, as if the Judge who held tito Court, had decided it alone, *406 and liad not adjourned it to the Court of Conference, for the opinion of all the Judges. The record between the parties was complete in the Superior Court.
' It is to be kept in view, that it was not necessary, that the whole record should be taken to the Court of Conference, it was only necessary to transmit as much of it as set forth the question adjourned there ; after that question was decided, the decision was certified to the Superior Court from whence it came, as before observed. The record sent to the Court of Conference remained there ; but it was a dead letter, the Court could proceed no further upon it, all further proceedings were carried on in the Superior Court, and Í think, without doubt, that the judgment between the parties was in the Superior Court.
Suppose two questions of law to arise in the Superior Court, and one only to he transferred to the Court of Conference, decided upon and certified hack, the other to be decided by the Judge alone, who held the Court, there could be hut one judgment in such suit, and that judgment surely would be in the Superior Court.
The act of 1810, New Rev. ch. 785, authorises an appeal from any decision made in the Superior Court, to the Court of Conference (now styled the Supreme Court) and by another act, it is declared that no Judge shall give an opinion in the Supreme Court, from whose opinion, an appeal may have been granted; but it is obvious that the. regulations do not affect, the present question, because (lie case, now before the Court was brought here by adjournment, under the act 1799, and not by way of appeal, so that all the Judges were at liberty to take part in deciding them.
The act of 1818, New Rev. ch. 962, constituting the present Supreme Court, declares that all causes pending in the then existing Supreme Court at that time, shall he decided by the Judges appointed by said act, and shall have, in cv.vv respect, the same effect and operation, and shall he certified and carried into effect, in the same man *407 ner, in all respects, as if made in the Supreme Court, under its present form. It therefore appears, that both . the cases now under examination, are to be decided, as cases adjourned to the Court of Conference, under the act of 1799. I therefore think, that when the decrees were made in those cases, and certified to the Superior Courts respectively, those decisions or decrees, were decisions or decrees of the Superior Courts. These cases were adjourned to the Supreme Court, to make all the Judges party to them, in order thereby to make the decisions in the State uniform.
If I am right in this view of the case, it follows, that a rehearing may be had in one of them, and that a Bill may be brought to review the other Many authorities have -been read in this case, which no doubt were very applicable to the organization of the Courts in England, but which did not apply in this case ; because our Courts are far from being similarly constituted with the Courts in that country.
Henderson, Judge. —
These cases depend, I think, on the question, whether the decrees sought to be reheard and reviewed, are the judgments of the Courts wherein the petition to rehear and the bill to review them, are filed, or the judgments or decrees of a superior and controlling Court. This question depends on the construction of our act of 1799, directing the Judges to meet at Raleigh, for the purpose of determining all questions of Law and Equity arising and remaining undetermined on the Circuit. The Sd section directs, that whenever any question of Law or Equity shall arise upon the Circuit, before any of the Judges of the Superior/Courts, which the Judge sitting may be unwilling to determine, and shall be desirous of further consideration, and a conference with the other Judges ; or where such questions had already arisen on the Circuit, and had remained undecided, by reason of a disagreement of the Judges on the the Circuit, in either case, the Clerk of the District *408 Court, under the direction of the Judge then sitting, before whom such question shall arise or come, shall make . out a transcript of the proceedings in the case, and deliver the same to the Judge, or the case shall be made out by the Counsel, under the direction of the Judge, or by Judge himself, as the nature of the case may require, which the Judge shall file at the meeting of the Judges, with their Clerk. By the 4th section, the Judges, are directed to argue and determine such cases, and file their opinions in writing with their Clerk. The, 5th section directs, that the Clerk of the meeting shall make out a full and correct certificate of the decision of the Judges,, and forward it to the Clerk of the Superior Court of Law or Equity, where the question had been depending and had arisen; and the Clerk of the said Superior Court shall issue execution, or otherwise proceed, as the decision of the Judges may demand. I have not given the words of the act, except only such as may assist us in ascertaining the meaning of the Legislature, so far a3 affects the present question. I consider this meeting of the Judges under this act, and also under the act of 1810, when sitting on adjourned cases, as possessing not a single attribute or quality of a Court, further than to protect themselves from interruption, that they might discharge the functions conferred bylaw ; they had no process by which parties were brought before them, or by which they enforced their decrees ; the causes in which the points arose remained in the Superior Courts, the points only were adjourned to the meeting, the judgments-were enforced by process from the Superior Courts, on judgments of the Supreme Courts, entered in that Court —they are judgments of the same grade as the other judgments of the Court. In ascertaining what the Jaw is, I would respect it as a higher evidence, as I would respect an opinion maturely formed, more than one hastily made up; as the. opinion of six men, more than the opinion of one man. But in Juridical gradation, I should rank it only as the judgment of the Superior Court. I *409 think there is nothing in the argument, that upon the certificate of the Clerk of the meeting of the Judges, the Clerk of the Superior Court issues execution instanter. This is to avoid delay ; the judgment is entered instantcr from the certificate, as coming from theJudi-cial power presiding in that Court ; and it is as competent for the Legislature to provide that it should be trans_ Knitted by the mode pointed out in the act, as to await the arrival of the Judge, and then (the doubts being removed) to receive, the judgment from the lips of the Judge. The Clerk issues an execution upon it as a record of that Court, and therein recites it as such. It is said, to permit the Judge to rehear, is to permit him to alter or change the decree, it thereby places him above the Conference Court. I think not, it only makes him equal to himself, and gives to him the power inherent in our Chancellors,, to rehear and alter the interlocutory decrees of his own Court, and to review and to reverse its final decrees, nor can this be considered as a subterfuge, that it is obeying the opinion of all the Judges in form, and substituting his own opinion for their’s; he obeys the will of the Legislature by causing the opinion of the Judges in Conference, to be entered as the judgment of the judicial power, which presides in that Court, and that judgment has all the qualities of a judgment of that Court, and none other, liable to be reheard and reviewed by the same Judicial power that made it. I am strongly impressed with the belief, that this is the only fair construction of the act ,• for it is not.fairly to he presumed, that the Legislature intended to take from these judgments a quality incident to Chancery decisions — a quality of being revised somewhere ; and if not by application to the Supreme Court, to what Court shall application he made ? If to the Conference Court, the applicant would be informed that they have not, nor ever had the. record — it never was before them j that they had only the points of the case brought before the Judicial body which presides in the Superior Courts, when not in Com *410 ferencej that the instructions of that body had been entered on the records of the Superior Courts j that they had not any record to alter or amend.
i have cited no authorities, for none can be found in the history of.the English law j it bears no analogy to the decrees of the House of Peers, that has every attribute of a Court. It lias the most, compulsory process to bring parties before them, to-wit, an appeal which lies to them from the Court of Chancery, and there is no doubt but they might cause the decrees to be entered on their rolls, and enfore them by process of their own : but, as matter of convenience, their decrees are remitted to the Court from which the case came, and there enforced. But on the point of re-examining their decrees, I express no opinion j nor would I be understood as expressing any in cases of appeals to the late Supremo Court, or to cases determined by this Court.
I am therefore of opinion, that the motion to dismiss the Bill of review', in the case of Griffin’s heirs & next of kin v. Griffin’s executors or trustees, and the petition to rehear the interlocutory decree in the case of Benzien and others v. Lenoir and others, be disallowed. I think they both stand on the same ground.